MILTON PAISNER & others *vs.* ATTORNEY GENERAL & others.[1]

Suffolk.   November 9, 1983. — December 14, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney General.   General Court.   Constitutional Law,* Initiative.
*Words,* "Law."

The Attorney General has authority, under pertinent parts of art. 48, as
amended by art. 74, of the Amendments to the Massachusetts Consti-
tution to decline to certify a popular initiative petition as not in proper
form for submission to the people, on the ground that it does not pro-
pose a "law." [597-598]

A popular initiative proposal intended to govern the internal organization
and procedures of the two branches of the Legislature in matters re-
specting the selection of presiding officers, the appointment of members
to leadership and committee positions, and the business of legislative
committees, and to limit the salaries of members holding leadership
positions, infringed upon the unicameral powers residing in each
branch of the Legislature acting alone and thus was not a constitution-
ally permissible subject for a statute enacted by the people through the
initiative process. [598-603]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 14, 1983.

The case was reported by *Liacos, J.*

*Robert G. Stewart (Paul J. Hartnett, Jr.,* with him) for
the plaintiffs.

*Thomas R. Kiley,* Assistant Attorney General (*Francis X.
Bellotti,* Attorney General, with him) for the defendants.

*John M. Mullen* for the intervener.

---

[1] The Secretary of the Commonwealth is also named as a defendant.
The President of the Senate, William M. Bulger, was permitted to inter-
vene.   His presentation was generally supportive of the position and rea-
soning of the Attorney General.

We also acknowledge the assistance of amicus briefs submitted by the
Counsel to the Massachusetts House of Representatives, the Counsel to the
Massachusetts Senate, and Mr. Paul G. Keough.

*John J. Curtin, Jr., E. Susan Garsh, Susan A. Shepard, John F. Donovan, Jr., & Paul C. Menton,* for the House of Representatives, amicus curiae, submitted a brief.

*James R. McIntyre & Irene R. Comeau,* for the Senate, amicus curiae, submitted a brief.

*Paul G. Keough, John M. McKelway, Jr., Mark A. Lowery & Robert P. Keough,* for Paul G. Keough, amicus curiae, submitted a brief.

HENNESSEY, C.J.  This is an action for declaratory and injunctive relief challenging a decision of the Attorney General, who declined to certify an initiative petition on the ground that it was not in proper form for submission to the people.  Art. 48, The Initiative, II, § 3, of the Massachusetts Constitution.[2]  The Attorney General ruled in substance

---

[2] Pertinent parts of art. 48, as amended by art. 74 of the Amendments to the Massachusetts Constitution, are as follows:

"I. *Definition.*

"Legislative power shall continue to be vested in the general court; but the people reserve to themselves the popular initiative, which is the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection; and the popular referendum, which is the power of a specified number of voters to submit laws, enacted by the general court, to the people for their ratification or rejection.

"THE INITIATIVE.

"II. *Initiative Petitions.*

"SECTION 1. *Contents.* — An initiative petition shall set forth the full text of the constitutional amendment or law, hereinafter designated as the measure which is proposed by the petition.

"SECTION 2. *Excluded Matters.* — No measure that relates to religion, religious practices or religious institutions; or to the appointment, qualification, tenure, removal, recall or compensation of judges; or to the reversal of a judicial decision; or to the powers, creation or abolition of courts; or the operation of which is restricted to a particular town, city or other political division or to particular districts or localities of the commonwealth; or that makes a specific appropriation of money from the treasury of the commonwealth, shall be proposed by an initiative petition; but if a law approved by the people is not repealed, the general court shall raise by taxation or otherwise and shall appropriate such money as may be necessary to carry such law into effect.

"Neither the eighteenth amendment of the constitution, as approved and ratified to take effect on the first day of October in the year nineteen

that the initiative petition did not propose enactment of a "law" as required by art. 48. We conclude that the Attorney General was correct both in his determination that he had the authority to decline to certify the petition, and in his ruling that the petition does not propose a proper subject for the popular initiative.

The case comes to the full court by way of reservation and report without decision by a single justice of this court, and on a statement of agreed facts. One week after the Attorney General informed the plaintiffs that he was unable to certify their petition, they commenced this action by filing their complaint in the Supreme Judicial Court for Suffolk County. At that time they requested a preliminary injunction designed to permit them to gather signatures during the pendency of the case. The Attorney General did not oppose issu-

hundred and eighteen, nor this provision for its protection, shall be the subject of an initiative amendment.

"No proposition inconsistent with any one of the following rights of the individual, as at present declared in the declaration of rights, shall be the subject of an initiative or referendum petition: The right to receive compensation for private property appropriated to public use; the right of access to and protection in courts of justice; the right of trial by jury; protection from unreasonable search, unreasonable bail and the law martial; freedom of the press; freedom of speech; freedom of elections; and the right of peaceable assembly.

"No part of the constitution specifically excluding any matter from the operation of the popular initiative and referendum shall be the subject of an initiative petition; nor shall this section be the subject of such a petition.

"The limitations on the legislative power of the general court in the constitution shall extend to the legislative power of the people as exercised hereunder.

"SECTION 3. *Mode of Originating.* — Such petition shall first be signed by ten qualified voters of the commonwealth and shall be submitted to the attorney-general not later than the first Wednesday of the August before the assembling of the general court into which it is to be introduced, and if he shall certify that the measure and the title thereof are in proper form for submission to the people, and that the measure is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial state elections, and that it contains only subjects not excluded from the popular initiative and which are related or which are mutually dependent, it may then be filed with the secretary of the commonwealth. . . ."

ance of the requested preliminary injunction and it was entered on September 19, 1983. The single justice also permitted the President of the Senate to intervene.

It is clear beyond dispute that the initiative petition here concerns the internal proceedings of the two Houses of the Legislature. Thus, the plaintiffs in their brief state: "Plaintiffs have proposed important changes to discrete aspects of the procedures in the Legislature." Many of the measure's proposals relate to the organization and operation of the House and Senate in the form of proposed additional sections of G. L. c. 3 (see § 1 of the proposed initiative measure). Procedures are prescribed for the nomination of presiding officers (§ 71), the appointment to majority and minority floor leadership positions (§ 72), the nomination, approval, and election of "chairs of legislative committees" (§§ 73, 74), and the selection of committee members (§ 75). Procedures are prescribed for final reporting of matters by committees (§ 78), for the discharge of legislative matters by petition (§ 79), for the approval and signing of favorable reports of a committee (§ 80), for the recording of committee votes in certain circumstances (§ 81), for notice of committee sessions (§ 82), and for a public hearing on every bill (§ 83). There are provisions concerning legislative procedures, such as daily calendars, the printing of bills, and roll calls (§§ 84-87), and for a committee on legislative administration and budget (§§ 90-91). The proposal contains other matters such as limitations of the salary differentials of legislative leaders (see § 4 of the proposed initiative measure). The proposal is to be effective, if adopted, "on the first Wednesday of January next following its passage." See § 6 of the proposed initiative measure.

There are two issues before us: (1) Whether the Attorney General has authority under art. 48 to refuse to certify a proposed initiative as not in proper "form" because it does not propose a "law," and (2) if the Attorney General has such authority, whether his ruling was correct that the petition here does not propose a law. The Attorney General, in concurring that our consideration is limited to these two

issues, disclaims any general authority under art. 48 to pass on other aspects of the constitutional validity of a submitted initiative petition. In this disclaimer he is correct. Indeed, the courts are similarly limited: "The people acting by means of the initiative, like the General Court, can enact measures that violate the fundamental and supreme law of the Constitution and that consequently have no force or effect. But no court can interfere with the process of legislation, either by the General Court or by the people, before it is completed, to prevent the possible enactment of an unconstitutional measure. . . . The judiciary is barred from the legislative field just as it is from the executive." *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 246-247 (1946). *Opinion of the Justices*, 309 Mass. 571, 580-581 (1941).

We turn now to the two issues before us.

1. *The Attorney General's Review of the Form of Petition.*

The plaintiffs assert that the Attorney General has no authority under art. 48 to refuse to certify an initiative petition on the ground that he is of opinion that it does not propose a law as required by art. 48.[3] The Attorney General counters that he has such authority because his function includes a certification that the petition is "in the proper form for submission to the people," and this requires him to determine whether the petition is within the scope permitted by art. 48. We agree with the Attorney General.

The Constitution imposes, as to the initiative process, several responsibilities upon the Attorney General which require the exercise of his discretion and legal judgment. For example, he prepares summaries and attests that amendments to the petitions are "perfecting." Despite this grant

[3] The pertinent part of art. 48, The Initiative, II, § 3, requires the Attorney General to: "[C]ertify that the measure and the title thereof are in the proper form for submission to the people, and that the measure is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial state elections, and that it contains only subjects which are not excluded from the popular initiative and which are related or which are mutually dependent . . . ."

of significant responsibilities, despite the fact that the Attorney General is the chief law officer of the Commonwealth, and despite the fact that no other State officer or official has been given explicit authority to rule upon the basic question related to the scope of art. 48, the plaintiffs would have us construe the word "form" in a narrow and technical sense.

This court has quashed certification by the Attorney General of initiative petitions which did not propose a law and thus were beyond the scope of art. 48. *Cohen* v. *Attorney Gen.,* 357 Mass. 564, 578-579 (1970). See *Opinion of the Justices,* 262 Mass. 603 (1928). It follows that the Attorney General has the prerogative, indeed the duty, pursuant to his review of the "form" of the initiative petition, to apply his legal judgment to the issue whether a law is proposed.[4]

Finally, in response to an argument of the plaintiffs that the Attorney General must not be permitted, in the certification process, to thwart the will of the people, we observe that, as in the instant case, the decision of the Attorney General as to certification is subject to judicial review. See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230 (1946). This is a safeguard against errors of law or arbitrary action by the Attorney General.

2. *Does This Petition Propose a Law?*

It is clear to us that the popular initiative is confined to laws and constitutional amendments. This conclusion derives from the plain meaning of the words of art. 48: "Legislative power shall continue to be vested in the general court; but the people reserve to themselves the popular initiative, which is the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection." Art. 48, The Initiative, I. "An initiative petition shall set forth the full text of the constitutional amendment or law, hereinafter designated as the

---

[4] Although the Attorney General does not rely upon the point, we think a persuasive argument might be made that the Attorney General could also decline to certify the initiative petition on the ground that it contains a subject "excluded from the popular initiative." See the quoted language from art. 48, in note 3, *supra*.

measure, which is proposed by the petition." Art. 48, The Initiative, II, § 1. Since this case does not concern constitutional amendments, we must examine whether the proposed initiative relates to a law. We conclude that it does not.

The first chapter of Part 2 of the Constitution of the Commonwealth establishes "The Legislative Power" as including prerogatives other than law-making. The first section of that chapter provides that laws may be enacted by bicameral action of the two Houses and presentment to the Governor. However, in addition to these law-making powers, the respective branches of the General Court possess many unicameral powers, most of which are bestowed on them by Part II, c. 1, §§ 2 and 3. The Attorney General fairly summarizes some examples of these powers: "The House alone, for instance, may originate a money bill, Pt. II, c. 1, § 3, Art. 7, or make an impeachment, Pt. II, c. 1, § 3, Art. 6, while the Senate alone may hear and determine those impeachments, Pt. II, c. 1, § 2, Art. 8. The power to 'choose its own President, appoint its own officers, and determine its own rules of proceedings' is conferred exclusively on the Senate by Pt. II, c. 1, § 2, Art. 7, while the members of the House of Representatives possess the corollary power to 'choose their own Speaker, appoint their own officers, and settle the rules and orders of proceeding in their own House . . .' by virtue of Pt. II, c. 1, § 3, Art. 10.''

The Supreme Court of the United States has recognized the similar dual power of Congress in its bicameral law-making acts and its unicameral acts. *Immigration & Naturalization Serv.* v. *Chadha*, 462 U.S. 919, 954-955 (1983). Among the unicameral powers recognized by the Court is the power of each branch to act alone in determining its own rules and other internal matters. *Id.* at 955 n.20.

Thus not all legislative products are laws and we examine the proposed initiative to decide in which category of legislative power it resides, laws or rules. Since the proposal concededly relates to internal legislative procedures, which are within the constitutional unicameral powers of the respective Houses, it can logically be argued that the uni-

cameral/bicameral distinction favors a conclusion that the proposed initiative does not concern a law. The Attorney General, however, submits what he believes are other critical distinctions between laws and rules. We consider them below, and we find them supportive of the conclusion that the proposed initiative does not relate to a law.

First, laws govern conduct external to the legislative body, while rules govern internal procedures. *Immigration & Naturalization Serv.* v. *Chadha, supra* at 952. As we have seen, it is clear in this case that the initiative petition is aimed at the internal procedures of the branches of the Legislature, and this indicates that this petition establishes rules rather than laws because its principal purpose is to order the internal operations of the Senate and the House rather than to alter the legal duties of persons outside the Legislature.

Second, a law is binding; a rule is not. See *Opinions of the Justices,* 126 Mass. 547, 550 (1781); *Opinion of the Justices,* 66 N.H. 629, 632 (1891). Legislative rule-making authority is a continuous power absolute and beyond the challenge of any other tribunal. *United States* v. *Ballin,* 144 U.S. 1 (1892). Even if the proposed initiative were to be enacted, the continuing power of the individual branches to ignore its provisions and to determine their own procedures would render the proposal a nullity. This is in sharp contrast to the methods permitted by the Constitution for rescinding or amending laws. It cannot be emphasized too strongly that this power over procedures rests, not in the "General Court," but in the separate Houses of the Legislature. Part II, c. 1, §§ 2 and 3, of the Massachusetts Constitution. See *Dinan* v. *Swig,* 223 Mass. 516, 517 (1916). Thus each branch of each successive Legislature may proceed to make rules without seeking concurrence or approval of the other branch, or of the executive, and without being bound by action taken by an earlier Legislature. *Id.* at 517, 519. The plaintiffs argued before us that if their initiative were enacted, the Houses of the Legislature would not have unicameral power to nullify its content. In this they are mistaken, because such a result would effectively vacate the

constitutional authority of the Senate and House to order their own internal procedures. This cannot be brought about by an initiative petition unless that petition, unlike the one before us, seeks and accomplishes a constitutional amendment to that end. Thus the initiative proposed here should not be characterized as a law because it is not binding. If enacted, it would be no more than a nonbinding expression of opinion, and we have held that such a plebiscite or declaration is not a law and is not an appropriate subject for the popular initiative. *Cohen* v. *Attorney Gen.,* 357 Mass. 564, 578 (1970). See *Opinion of the Justices,* 262 Mass. 603, 604-605 (1928).

One of the plaintiffs' arguments derives from the undisputed fact that the Commonwealth has statutes which directly relate to the internal proceedings of the two Houses. See G. L. c. 3. As we view their argument, the plaintiffs construct a syllogism: the Legislature has enacted such statutes; the popular initiative is as broad as the Legislature's law-making power; the initiative therefore can encompass the internal proceedings of the Houses of the Legislature.

The flaw in the plaintiffs' argument is in their minor premise. We agree that the popular initiative is coextensive with the Legislature's law-making power under Part II, c. 1, § 1, but, as we have seen above, the power to determine their own rules of proceedings is exclusively granted to the Senate and the House respectively by virtue of Pt. II, c. 1, § 2, art. 7, and Pt. II, c. 1, § 3, art. 10. The enactment of statutes relating to internal proceedings was obviously accomplished by the voluntary participation of each of the two Houses. Thus each House was essentially engaged in its rule-making function. It does not follow, from this voluntary exercise by the Houses, that others, through the popular initiative, may introduce rules under the guise of laws. The analogy urged by the plaintiffs is nonexistent. Such procedural statutes are not binding upon the Houses; consequently they are not laws in the sense contemplated in art. 48. Either branch, under its exclusive rule-making constitutional prerogatives, is free to disregard or supersede such statutes by

unicameral action. See *Dinan* v. *Swig,* 223 Mass. 516, 517, 519 (1916).

The plaintiffs also fail in their final argument, in which they rely upon the language in *Opinion of the Justices,* 375 Mass. 795, 817 (1978), as follows: "[E]xcept as to matters expressly excluded, the scope of the power of the people to enact laws directly is as extensive as that of the General Court. The matter of regulating legislative proceedings is not excluded from the initiative process. Art. 48, The Initiative, II, § 2." The second of the two sentences, whether read alone or in context with the first sentence, does not assist the plaintiffs, because it merely states the indisputable fact that internal proceedings are not matters explicitly excluded in art. 48, The Initiative, II, § 2, from the initiative process.

Further, the statement that "the scope of the power of the people to enact laws directly is as extensive as that of the General Court," is correct and is not inconsistent with the conclusions we have reached in this case.[5] Where internal proceedings are concerned, future legislative sessions cannot be bound by an action of the General Court. "This discretion to determine the method of procedure cannot under the Constitution [Part II, c. 1, § 2, art. 7, and Part II, c. 1, § 3, art. 10] be abrogated by action taken by an earlier Legislature." *Dinan* v. *Swig, supra* at 519. In sum, the rules of future sessions of the House or the Senate cannot under the Constitution be controlled by vote of the General Court or by vote of the people, or even by vote of the respective legis-

---

[5] The Attorney General observes that the 1978 *Opinion,* like all *Opinions of the Justices,* is not a binding adjudication by this court and does not have a stare decisis effect. *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 314 (1950). "It has been uniformly and many times held that such opinions, although necessarily the result of judicial examination and deliberation, are advisory in nature, given by the justices as individuals in their capacity as constitutional advisers of the other departments of government and without the aid of arguments, are not adjudications by the court and do not fall within the doctrine of *stare decisis.*" *Commonwealth* v. *Welosky,* 276 Mass. 398, 400 (1931). We, of course, have no recourse to these principles in this case, because of our above conclusions.

lative branches. The people through the popular initiative do indeed, as we stated in the 1978 *Opinion,* have a power to enact legislation which is coextensive with the power of the General Court. However, the plaintiffs, in their initiative petition which seeks to establish rules for future legislative sessions, claim for the people a power greater than that of the General Court. In this the plaintiffs are clearly wrong.

Judgment shall enter vacating the preliminary injunction and declaring that the Attorney General was within his authority under art. 48 in declining to certify the proposed initiative, and further declaring that the petition here does not propose a law and consequently is not a proper subject for the popular initiative.

*So ordered.*