JOSEPH W. NIGRO & another[1] vs. ATTORNEY GENERAL
& others.[2]

Suffolk.  May 5, 1988. — May 25, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Initiative. *Attorney General. Statute*, Title.

Description of the initiative petition process provided by art. 48 of the
Amendments to the Massachusetts Constitution, as amended. [440]
The Attorney General, acting under pertinent parts of art. 48, as amended by
art. 74, of the Amendments to the Massachusetts Constitution, correctly
certified a proposed popular initiative petition as "in proper form for
submission to the people," notwithstanding the asserted failure of the
petition's title to give fair notice of the scope and essential nature of the
proposed law. [442-448]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 4, 1987.

The case was reported by *Wilkins*, J., on a stipulation of
agreed facts.

*Paul W. Shaw* for the plaintiffs.

*Thomas A. Barnico*, Assistant Attorney General (*Eric J.
Mogilnicki*, Assistant Attorney General, with him) for the At-
torney General & another.

*Thomas R. Kiley* (*Gerald J. Caruso* with him) for the inter-
veners.

*James T. Grady*, for Joint Council No. 10 of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, amicus curiae, submitted a brief.

---

[1] Charles Raso.

[2] Secretary of the Commonwealth. The first ten signers of the petition
whose certification by the Attorney General is challenged on appeal,
Raymond D. Caruso, Stephen P. Tocco, J. Douglas Hunter, Michael R.
Todd, James M. Coull, Richard K. Anderson, Anthony J. Tocco, Jean
Connaughton, Gerald W. Kriegel, and Julia M. DeCola were allowed to
intervene as defendants.

O'CONNOR, J. Under art. 48 of the Amendments to the Constitution of the Commonwealth, The Initiative, II, § 3,[3] the Attorney General must decide whether to certify a proposed initiative petition as being "in proper form for submission to the people." The plaintiffs in this action contend that the Attorney General improperly certified an initiative petition entitled "An Act repealing the prevailing wage law for the commonwealth and its cities and towns."[4] Their complaint, filed in the Supreme Judicial Court for Suffolk County, sought to quash the Attorney General's certification. A single justice of this court allowed a motion by the first ten signers of the petition to intervene as defendants, see note 2, *supra.* He also reserved and reported the case to the full bench for decision. Although the plaintiffs' complaint and the answer and amended cross claim of the defendant-interveners raise other issues and claims, all parties agree that the only issue presently before us is

---

[3]Except as otherwise indicated, references to art. 48 are intended to refer to art. 48 as amended by art. 74, by art. 81, and by art. 108 of the Amendments to the Constitution of the Commonwealth.

[4]The text of the initiative petition is as follows: "AN ACT REPEALING THE PREVAILING WAGE LAW FOR THE COMMONWEALTH AND ITS CITIES AND TOWNS Be it enacted by the People, and by their authority. Section 1. Section 26 of Chapter 149 of the General Laws as most recently amended by Chapter 665 of the Acts of 1986 is hereby amended by striking out the third, fourth and fifth sentences. Section 2. Section 27 of Chapter 149 of the General Laws as most recently amended by Chapter 284 of the Acts of 1987 is hereby amended by striking out the first ten sentences thereof. Section 3. Section 27B of Chapter 149 of the General Laws as most recently amended by Chapter 296 of the Acts of 1967 is hereby repealed. Section 4. Section 27D of Chapter 149 of the General Laws as most recently amended by Chapter 475 of the Acts of 1961 is hereby amended by including after the word 'words' the following language: ' "public works" shall without limitation also mean public buildings and public works;'. Section 5. Section 27F of Chapter 149 of the General Laws is hereby repealed. Section 6. Section 27G of Chapter 149 of the General Laws is hereby repealed. Section 7. The provisions of this Act are severable, and if any of its provisions or an application thereof shall be held unconstitutional or unlawful by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions or other application thereof."

whether the Attorney General's certification was erroneous because of the petition's assertedly inadequate title.[5]

We first set out a brief overview of the initiative petition process. Under art. 48, "the people reserve to themselves the popular initiative, which is the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection." Art. 48, Definition, I. "An initiative petition shall set forth the full text of the constitutional amendment or law . . . which is proposed by the petition." Art. 48, The Initiative, II, § 1. "When an initiative petition is originated by ten qualified voters, it is submitted to the Attorney General, who must make certain determinations concerning the form and substance of the measure." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 217 (1981). If the Attorney General certifies that the petition meets a number of conditions, one of which is "that the measure and the title thereof are in proper form for submission to the people," the petition may then be filed with the Secretary of the Commonwealth (Secretary). Art. 48, The Initiative, II, § 3. The Attorney General must prepare a "fair, concise summary" of petitions which he has certified. *Id.* "This summary is to appear on the top of each blank used to obtain subsequent signatures in support of the measure, and it will appear on the ballot, if the measure is submitted to the people at a general election." *Massachusetts Teachers Ass'n, supra.*

If sufficient signatures are timely filed with the Secretary, the Secretary must transmit the measure to the Clerk of the House of Representatives, "and the proposed measure shall then be deemed to be introduced and pending." Art. 48, The Initiative, II, § 4. If the General Court fails to enact the proposed law before the first Wednesday in May, then the petition will be put on the ballot before the voters if sufficient additional signatures are timely filed. Art. 48, The Initiative, V, § 1.

___

[5] Joint Council No. 10 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America has moved to file an amicus curiae brief later than the usual deadline, see Mass. R. A. P. 17, 365 Mass. 864 (1974), which brief they submitted with the motion. The defendant-interveners have filed a motion to strike that brief. We have considered the brief of the Joint Council.

The parties have stipulated as to the following facts. The initiative petition at issue was one of five petitions that were filed with the Attorney General on August 5, 1987, each entitled "An Act repealing the prevailing wage law for the commonwealth and its cities and towns." These petitions were signed by the same registered voters of the Commonwealth, members of a political action committee dedicated to repealing the "prevailing wage laws." These petitions were assigned numbers 87-13, 87-14, 87-15, 87-16, and 87-17.

On September 4, 1987, the Attorney General certified Initiative Petitions 87-16 and 87-17, and prepared summaries of those petitions. The two petitions were then filed with the Secretary, who provided blank forms for use in obtaining additional signatures of registered voters. Sufficient signatures were obtained on Initiative Petition 87-16 to require its transmission by the Secretary to the Clerk of the House of Representatives. The Secretary transmitted it on January 6, 1988. A sufficient number of signatures was not obtained on Initiative Petition 87-17. Initiative Petition 87-16 was then introduced in the General Court, printed as a bill, and assigned a number in accordance with the usual legislative process. We understand that the Legislature did not enact the bill before the first Wednesday in May, the deadline for legislative action under art. 48, The Initiative, V, § 1.[6]

The Attorney General's summary of the measure states that "[t]he proposed law would repeal state law requiring that the wages, including payments to health and welfare plans, paid to persons employed in the construction of public works be no less than the wages paid locally under existing collective bargaining agreements and understandings, or by the municipality, for the same kind of work. Under the proposed law, the Commissioner of Labor and Industries would no longer set wage rates for such work or classify jobs.

---

[6] Although the initiative petition will not go on the ballot unless sufficient additional signatures are timely filed by July 6, 1988, see art. 48, The Initiative, V, § 1, none of the parties has suggested that the matter is not ripe for adjudication at this time.

"The proposed law would also remove the Commissioner of Labor and Industries' authority to set the wage rates of employees of contractors who move office furniture and fixtures for the state or a county, city, town or district, and remove the Commissioner's authority to set the wage rates of operators of vehicles and other equipment engaged in public works.

"The proposed law would not change the way wages are set for laborers employed by the state Department of Public Works and the Metropolitan District Commission."

The measure would accomplish these changes by repealing certain parts of G. L. c. 149, §§ 26 and 27, and by repealing §§ 27B, 27F, and 27G in their entirety. Also, a part of the measure not mentioned in the Attorney General's summary would amend c. 149, § 27D, by including a definition for the term "public works" as used in §§ 26 to 27C, inclusive.

The plaintiffs contend that the initiative petition filed by the defendant-interveners violates art. 48 because the title to the petition, "An Act repealing the prevailing wage law for the commonwealth and its cities and towns," is not in "proper form for submission to the people." They argue that the title to a petition "must be sufficiently accurate to give fair notice to the legislature and to the voters of the scope and essential nature of the proposed law." They say that the title to the initiative petition does not meet this standard because the initiative petition would repeal sections of c. 149 that are not part of the "prevailing wage law," which the plaintiffs confine to G. L. c. 149, §§ 26-27D; because it does not *entirely* repeal all sections of the "prevailing wage law" as plaintiffs define that term; and because the title does not give any notice of the definitional change that the petition would make in § 27D.[7] We reject the plaintiffs' contentions, and hold that the Attorney General properly certified the measure and its title as being in "proper form for submission to the people."

---

[7] Amicus curiae, see note 5, *supra*, argues that, while the plaintiffs' standard may be too strict, a title should at least lead to an inquiry of the contents of the petition, and that the title here fails even this more lenient test. Our discussion of plaintiffs' arguments also adequately addresses the contentions of amicus curiae.

As originally adopted, art. 48 merely required the Attorney General's certification that "the measure is in proper form for submission to the people." At that time, art. 48 also provided that the Attorney General had to prepare a "description" of the measure. This description appeared both on top of the blanks provided for signers of the initiative petition after the Attorney General's certification and on the ballot. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth, supra* at 226-227. "The purposes of requiring a 'description' were said to be 'first, that the signers of an initiative or referendum petition understand the law which they propose to submit to the voters, and, secondly, that the voters understand the law upon which they are voting.'" *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 241 (1946), quoting *Evans* v. *Secretary of the Commonwealth,* 306 Mass. 296, 299 (1940).

Problems arose, however, because of the great length and detail required of a "description." *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 324 (1951). In *Opinion of the Justices,* 309 Mass. 631 (1941), the Justices were asked to advise the Legislature on the constitutionality of proposed legislation designed to deal with the fact that a lengthy description tended "to confuse rather than enlighten the voter," *id.* at 632. The legislative proposal would have provided for the preparation by the Attorney General of a "summarized description" rather than a "complete and comprehensive description" when he believed the latter would be too long and complicated. It also would have provided for the insertion by the Attorney General of a "fair title" for a law proposed by initiative petition, and for the inclusion of that title in copies of the proposed law prepared by the State Secretary. *Id.* at 633.

The Justices opined that neither part of the legislation was constitutional. The Legislature could not abridge the detailed description required by art. 48. *Id.* at 641-644. Furthermore, for the reasons stated below, the Legislature could not require the Attorney General to insert a "fair title" in a proposed law.

"The effect of legislation by the people by the initiative method, as of legislation by the General Court, is the enactment of a law. . . . It is for the petitioners to determine the text of the law that is to be submitted.

"In our opinion the principle above stated applies to the insertion in the petition . . . of 'a fair title of the proposed law,' determined by the Attorney General . . . .

"Though there is no constitutional requirement that an act passed by the General Court bear a title, it has long been the practice that it should do so. And such a 'title is in a legal sense a part of every statute and may be considered in determining its construction.' *Wheelwright* v. *Tax Commissioner*, 235 Mass. 584, 586. . . . [T]he title of such an act . . . is an expression of the legislative will.

". . . [W]e are of opinion that a title attached to a proposed law contained in an initiative petition constitutes a part of the 'full text' of such proposed law, and that the General Court has no power to authorize the Attorney General to change such 'full text,' either by adding thereto a title where none was attached to the proposed law by the petitioners, or by changing the title of a proposed law attached thereto by the petitioners." *Opinion of the Justices, supra* at 637-640.

That advisory opinion was handed down on June 23, 1941, and less than three weeks later the General Court in joint session agreed to enact what is now art. 74. It was again agreed to in joint session in 1943, and approved and ratified by the people in 1944. See *Bowe* v. *Secretary of the Commonwealth, supra* at 242. That amendment to art. 48 relaxed the rigid requirements of the "description" by requiring the Attorney General to prepare a "fair, concise summary" instead. *Id.* at 243. As amended by art. 74, art. 48 for the first time also required the Attorney General to certify that "the measure *and the title thereof* are in proper form for submission to the people" (emphasis added).

In *Bowe* v. *Secretary of the Commonwealth, supra*, decided just two years after the amendment of art. 48 by art. 74, we disposed of a challenge to the form of proposed laws and their titles in a manner that effectively refutes the plaintiffs' challenge to the title of the initiative petition in this case. We said there that, "[s]o far as the proposed laws may concern matters excluded from the initiative, the questions argued will be considered later. Apart from such matters, there is no legal test by

which the proposed laws and their titles can be held improper in form for submission to the people. There is still no requirement that a proposed law shall bear a title (*Opinion of the Justices*, 309 Mass. 631, 638, et seq.) except such intimation as may be contained in Amendment 74, § 1. *Nowhere is it provided that the title of a proposed law shall be descriptive of it to any particular degree, or wholly accurate so far as it is descriptive*" (emphasis added). *Id.* at 240-241.

We continue to adhere to our statement in *Bowe* that "[n]owhere is it provided that the title of a proposed law shall be descriptive of it to any particular degree, or wholly accurate so far as it is descriptive."[8] Accord *Opinions of the Justices*, 357 Mass. 787, 801-802 (1970) (majority opinion). The legislative history and structure of art. 48 demonstrate that the "proper form" requirement is not intended to require a title to give fair notice of the scope and essential nature of the underlying measure. Had the Legislature desired a title that was "fair" or that gave "fair notice," it would have said so, as it did in the proposed legislation commented on in *Opinion of the Justices*, 309 Mass. 631 (1941), which would have required that the Attorney General insert a "fair title." Instead, having been apprised by the *Opinion of the Justices*, *supra*, that the title to an act was part of its "full text," and "an expression of the legislative will," *id.* at 640, the Legislature delegated to the Attorney General the task of providing the public with an objective, accurate, and readable account of the measure solely through the preparation of a "fair, concise summary," rather than through both a "fair summary" and a "fair title."

Rather than being scrutinized for fairness, the title, as an integral part of the measure itself, was to be treated the same as the rest of the proposed law and checked only for "proper form." The debate concerning the original adoption of the "proper form" requirement reveals that the framers of art. 48

---

[8] However, we note that the statement in *Bowe*, that, apart from matters explicitly excluded from the initiative, "there is no legal test by which the proposed laws and their titles can be held improper in form for submission to the people" is undoubtedly too broad. See *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 598 (1983) (Attorney General has duty not to certify initiative petitions not in the form of a law).

were primarily concerned with avoiding errors of draftsmanship. See generally 2 Debates in the Massachusetts Constitutional Convention, 1917-1918, The Initiative and Referendum, at 723-730 (1918). Cf. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 236-237 (1981) (example of drafting error). But cf. *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 598 (1983) (rejecting "narrow and technical" reading of "proper form" requirement while holding that a proposed measure is not in "proper form" if it is not in the form of a law).

Thus, as originally proposed by Mr. Quincy of Boston, certification as to the form of a measure was required by *either* the Attorney General *or* an officer of the General Court whose duty was to assist in the drafting of bills. Debates, *supra* at 723. In moving that Mr. Quincy's version be amended to restrict certification to the Attorney General, Mr. Churchill of Amherst said that "the object is this: That we shall have a responsible officer . . . to certify that there are no mistakes. . . . That such mistakes are possible, Mr. President, even under the most careful, painstaking handling of the drafting of bills, every member of the Legislature knows . . . [including] mistakes which would change even the complete nature of a bill." *Id.* at 724. See also remarks of Mr. Quincy at 729-730 ("My whole effort in originating this suggestion . . . was to provide some competent legal revision of an initiative measure before it started"); remarks of Mr. Walker of Brookline at 730 (if "a measure was not in such form that the Attorney-General thought it wise," Attorney General could send originators of measure to Legislature's bill-drafting department, assuming one were to be created); remarks of Mr. Parker of Lancaster at 727 (amendment proposed by Mr. Quincy was "to make provision for verbal correction, possibly for verbal transposition, possibly improvement in the phrase and text of the initiative measure"; the Attorney General was the proper officer "to have the spontaneous wish of the people revised and put in intelligent form").

However, this check of form was not to become an inquiry into substance, see remarks of Mr. Churchill at 729 ("It is not a

question of what is contained in it; it is a question of its form"). Moreover, according to Mr. Parker of Lancaster, the Attorney General was to be "not the censor, but the aid and interpreter of the people's will"; and "if we are to have the initiative and referendum . . . [l]et the people speak freely, act freely; . . . [l]et there be as little restraint as possible, and let it be exercised by that officer who would be most impartial the Attorney-General." *Id.* at 728.

We believe that the plaintiffs' suggested standard is incompatible with the goal that "the people [should] speak freely . . . [and with] as little restraint as possible." The structure of art. 48 makes it clear that the voters do not need the title of an act to give fair notice of the scope and essential nature of the act. It is the *summary* that appears both on the ballot and on the top of the signature forms, and *not* the title (or text) of the Act. The summary serves the same purposes formerly served by the description, to inform both potential signers and voters of the contents of the proposed law. *Barnes* v. *Attorney Gen.*, 348 Mass. 671, 674 (1965). Although, according to the stipulation of the parties, the title to an initiative petition has appeared as part of the full text of a measure in the voter information pamphlet which is mailed to every voter in the State, see art. 48, General Provisions, IV; G. L. c. 54, § 53, it is only sent together with the summary and other supporting material. Furthermore, because titles are usually short, *Opinion of the Justices*, 309 Mass. 631, 639 (1941), they are not practical vehicles for conveying the desired information, especially if the measure is complex or contains several related subjects. Finally, any harm caused by a misleading title can be corrected by an accurate summary, see *Opinion of the Justices, supra* at 640-641. There is therefore no need for the title to give the voters fair notice of the contents of the proposed act. Cf. *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 240 (1946) (title may not be required at all).

Additionally, we reject the plaintiffs' arguments that a sufficiently accurate or descriptive title is required for the benefit of the Legislature, which is given a chance to enact an initiative petition before it is submitted to the voters. Legislators appear

to be in basically the same position regarding the title to an initiative petition as they are in regard to the title of every other bill that comes before the Legislature. See *Proprietors of Mills* v. *Randolph*, 157 Mass. 345, 350 (1892) (no constitutional requirement that subject of bill be expressed in title). In any case, it does not seem unreasonable to expect legislators to read at least the Attorney General's summary of an initiative, if not the full text. We also reject the plaintiffs' contention that a sufficiently accurate or descriptive title is required to aid subsequent judicial construction of a law enacted by initiative petition. Cf. *Opinion of the Justices*, *supra* at 639-640 (title can be useful in construing ambiguous statutes). The courts have been able to interpret legislation passed by the General Court in the absence of any requirement that legislative titles provide fair notice of the scope and essential nature of the legislation, and are undoubtedly equally capable when it comes to interpreting laws enacted by initiative petition. We therefore reject the standards proposed by plaintiffs and amicus curiae and reaffirm our holding in *Bowe* v. *Secretary of the Commonwealth*, *supra*.

The Attorney General was correct in certifying that the "measure and the title thereof are in proper form for submission to the people," and we therefore order that judgment be entered for the defendants on the plaintiffs' complaint.

*So ordered.*