YANKEE ATOMIC ELECTRIC COMPANY & others[1] *vs.*
SECRETARY OF THE COMMONWEALTH & others.[2]

Suffolk.  May 5, 1988. — July 7, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Initiative, Eminent domain. *Initiative. Attorney General. Eminent Domain,* Payment of award. *Administrative Law,* Official notice.

A challenge to the constitutional validity of an initiative petition, on grounds other than alleged failure of compliance with art. 48 of the Amendments to the Massachusetts Constitution, can be litigated only after the measure is enacted. [754-755]

Discussion of the factual inquiry appropriate for the Attorney General to undertake in determining, pursuant to pertinent provisions of art. 48 of the Amendments to the Massachusetts Constitution, whether to certify that a proposed initiative petition contains no subjects constitutionally excluded from the initiative process. [755-759]

In an action challenging the Attorney General's certification of a certain proposed initiative petition pursuant to pertinent provisions of art. 48 of the Amendments to the Massachusetts Constitution, on the ground that the measure, if enacted, would effect an uncompensated appropriation of private property to public use, a matter excluded from the initiative process by art. 48, The Initiative, II, § 2, this court directed that the Attorney General reconsider his certification after assessing the effect of the proposed measure, taking account of the factual matters implicit in the petition's language, as well as other relevant facts of which he may properly take official notice. [759-760]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 27, 1988.

---

[1] Eleven registered voters of the Commonwealth.

[2] The Attorney General of the Commonwealth. The original ten signatories of the initiative petition at issue in this case moved to intervene. This motion was reported by the single justice to the full court and is now allowed.

Amicus briefs were filed by Boston Edison Company and New England Legal Foundation.

The case was reported by *Lynch,* J.

The case was submitted on briefs.

*Thomas R. Kiley, Robert E. Sullivan, Laurie S. Gill & David R. Friedman* for the plaintiffs.

*James M. Shannon,* Attorney General, *Paul A. Lazour & Nathaniel S. Lawrence,* Assistant Attorneys General, for the Secretary of the Commonwealth & another.

*Ellen J. Messing, Benjamin Hiller & Joseph Kenyon,* for Christopher J. Hodgkins & others, interveners.

*William S. Stowe,* for Boston Edison Company, amicus curiae.

*Patrick W. Hanifin & Wayne S. Henderson,* for New England Legal Foundation, amicus curiae.

HENNESSEY, C.J. The plaintiffs filed a complaint in the Supreme Judicial Court for Suffolk County seeking relief in the nature of certiorari and mandamus respectively against the Attorney General and the Secretary of the Commonwealth in their official capacities. The plaintiffs challenge the Attorney General's certification of an initiative petition pursuant to art. 48 of the Amendments to the Constitution of the Commonwealth. Art. 48, The Initiative, II, § 3.[3] The plaintiffs also seek to prevent the Secretary of the Commonwealth from having the initiative measure placed on the ballot in the upcoming State election. See art. 48, The Initiative, IV, § 5. The single justice reserved and reported the case for consideration by the full court on the parties' motion.

On July 28, 1987, the initiative petition at issue in this case was submitted to the Attorney General pursuant to art. 48, The Initiative, II, § 3. The petition, entitled "The Stop Nuclear Waste Act" by its proponents, would, after July 4, 1989, prohibit "generation of electric power by commercial nuclear power plants in the Commonwealth by means which result in the production of nuclear waste."[4] The Attorney General is

---

[3] All references are to art. 48 as amended by art. 74, by art. 81, and by art. 108 of the Amendments to the Constitution of the Commonwealth.

[4] The full text of the measure proposed by the initiative petition is as follows:

THE STOP NUCLEAR WASTE ACT

An Act to prohibit the continued generation of electric power by commercial

required by art. 48, The Initiative, II, § 3, to certify, inter alia, that petitions submitted to him contain only matters not excluded from the initiative process by art. 48, The Initiative, II, § 2.[5] Among the matters excluded from the initiative are

---

nuclear power plants in the Commonwealth by means which result in the production of nuclear waste.

Be it enacted by the People, and by their authority.

Section 1. *Statement of Purpose.*

It is both uneconomical and unwise to continue to generate electric power in the Commonwealth by means which result in the production of nuclear waste when there is no method for disposal of nuclear waste. The purpose of this Act is to protect the people of Massachusetts from the consequences of this uneconomical and unwise course, while allowing a reasonable period of time for an orderly transition to other methods of electrical generation.

Section 2. *Prohibition.*

After July 4, 1989, there shall be no further generation of electric power by commercial nuclear power plants in the Commonwealth by means which result in the production of nuclear waste.

Section 3. *Conversion.*

Nothing in this Act shall be construed to prohibit the conversion of any commercial nuclear power plant in the Commonwealth to a non-nuclear fuel source.

Section 4. *Employee Protection.*

Any commercial nuclear power plant which closes due to prohibition contained in Section 2 shall be deemed a "facility" for purposes of General Laws Chapter 151A, Section 71A *et seq.*, which provides reemployment assistance benefits and health insurance benefits for employees affected by plant closings.

Section 5. *Severability.*

The provisions of this Act are severable, and if any of its provisions or an application thereof shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions or other applications thereof.

[5] Article 48, The Initiative, II, § 2, provides in relevant part as follows:

"*Excluded Matters* . . . No proposition inconsistent with any one of the following rights of the individual, as at present declared in the declaration of rights, shall be the subject of an initiative or referendum petition: The right to receive compensation for private property appropriated to public use; the right of access to and protection in courts of justice; the right of trial by jury; protection from unreasonable search, unreasonable bail and the law martial; freedom of the press; freedom of speech; freedom of elections; and the right of peaceable assembly."

Article 48, The Initiative, II, § 3, provides in relevant part as follows:

"*Mode of Originating.* Such petition shall first be signed by ten qualified

propositions "inconsistent with . . . the right to receive compensation for private property appropriated to public use." The propriety of the Attorney General's certification of the petition in the face of the plaintiffs' claim that it contained this excluded matter, and the extent of the Attorney General's fact-finding obligations in the certification process, are the central issues in this case.

It is undisputed that the plaintiff Yankee Atomic Electric Company and amicus Boston Edison Company (the utilities) separately own and operate the only two nuclear reactors in the Commonwealth. When the Attorney General was considering whether to certify the petition, the utilities argued that the petition should not be certified because it would effect a taking of their property. If, as the utilities argue, the petition effects a taking of their property, its failure also to provide for compensation would make it "inconsistent with" the right to such compensation, see *Bromfield* v. *Treasurer & Receiver Gen.*, 390 Mass. 665, 668-669 (1983), quoting *Haverhill Bridge Proprietors* v. *County Comm'rs of Essex*, 103 Mass. 120, 124-125 (1869) (the act effecting a taking "must provide for compensation, and a ready means of ascertaining the amount"), and the Attorney General should not have certified to the contrary.

The Attorney General's letter to the Secretary of the Commonwealth, certifying the petition, does not indicate what facts he considered in concluding that the petition does not contain an excluded matter, i.e., is not "inconsistent with . . . the right to receive compensation for private property appropriated to public use." The parties have stipulated as follows: "[T]he

voters of the commonwealth and shall be submitted to the attorney-general not later than the first Wednesday of the August before the assembling of the general court into which it is to be introduced, and if he shall certify that the measure and the title thereof are in proper form for submission to the people, and that the measure is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial state elections, and that it contains only subjects not excluded from the popular initiative and which are related or which are mutually dependent, it may then be filed with the secretary of the commonwealth."

Attorney General did not engage in a factual analysis to determine what effect the initiative might have on the two currently existing commercial electric nuclear power plants in Massachusetts, if it were passed into law. He did not engage in a factual analysis to attempt to determine the economic value of the two existing nuclear power plants before or after passage of the Petition. . . . The Attorney General takes the position in this litigation that the putative facts proffered by the plaintiffs to establish a taking by way of inverse condemnation are not ascertainable at this stage and/or have no relevance to the certification issue here presented. Accordingly, no stipulations of fact concerning the value of the Yankee plant, the reasonable investment backed expectations of its owners, its value after enactment of the Petition, the availability and/or form of compensation or any alternative uses of electrical power plants have been entered. Plaintiffs contend that if a fact based inquiry had been conducted at the certification stage or were conducted now, it would establish an inverse condemnation of the Yankee Rowe plant without providing compensation."

Before turning to the central issue of the extent of the Attorney General's fact-finding obligations, if any, in the certification process, two preliminary contentions can be resolved. First, the Attorney General contends that the corporate plaintiff, Yankee Atomic Electric Company lacks standing to maintain this action. Because the named individual plaintiffs do possess standing, we need not determine this argument's merits. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 214-215 (1981), citing *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 674-675 (1975). Second, the plaintiffs argue that the petition, assuming it effects a taking, is void, independent of the certification requirement of art. 48, because art. 10 of the Amendments to the Constitution of the Commonwealth provides that takings, even if compensated, can be authorized only by the Legislature. However, arguments regarding the validity of an initiative petition, not based on failure to comply with art. 48, cannot be pursued unless and until the measure has been enacted. See *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 597 (1983), quoting

*Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 246-247 (1946).

That the Attorney General should not ignore the "factual impact" of a petition, as he has stipulated he did here, in making his certification determination is clear from general legal principles, from the judicial decisions construing art. 48, from the article's language, and from the debates surrounding its adoption. In *Paisner, supra* at 597, involving the Attorney General's certification that a petition was in proper form, the court noted that the initiative petition places "several responsibilities upon the Attorney General which require the exercise of his discretion and legal judgment." Exercise of legal judgment involves, to some extent at least, applying legal principles to facts even when considering "pure" questions of law. For example, when determining whether a statute is overbroad in a First Amendment context, a number of supposed sets of facts are considered to determine if the statute impermissibly would reach them.

Moving beyond general principles, decisions reviewing certification by the Attorney General that a petition does not contain excluded subjects indicate that this court has considered the factual impact of petitions in conducting its review. In *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 248-253 (1946), involving restrictions on political campaign spending, the court concluded the petition at issue was not "inconsistent with" the right to freedom of elections because it did not impair "the freedom of a voter to express his choice as to men or measures . . . [and it] would tend to increase the freedom of elections by removing influences upon the voter that the use of money can bring to bear." *Id*. at 249. The court made similar determinations regarding the impact of the petition in addressing assertions that the petition, in various sections, contained excluded subjects because of its inconsistency with other rights. See also *Opinion of the Justices*, 309 Mass. 571, 584-587 (1941) (impact on Legislature's general supervision of the public treasury is considered in determining if petition contained excluded subject in that it called for a specific appropriation of funds); *Opinion of the Justices*, 300 Mass. 602, 606-

607 (1938) (court assesses impact on owners' real property interests in determining that petition contained only a reasonable police power regulation); *Opinion of the Justices*, 294 Mass. 607, 609 (1936) (petition's language limiting its application to towns with more than 12,000 inhabitants indicates that it contained an excluded subject for its operation is restricted to particular localities); *Horton* v. *Attorney Gen.*, 269 Mass. 503, 509-513 (1929) (petition's impact considered in rejecting argument that petition contained excluded subjects).

That the court reviews the factual impact of a petition, in determining if the Attorney General's certification decision was proper, logically indicates that the Attorney General should also consider the factual impact in making the initial certification decision. In *Paisner, supra* at 598, the court cited instances where it had previously quashed certifications regarding proper form on the ground that a petition did not propose a law, and concluded that the Attorney General, in certifying later petitions as to form, has the duty to exercise his legal judgment to determine that they do propose a law. Thus, the Attorney General should use the same approach in certifying a petition that the court will use in reviewing his decision. See *Amherst* v. *Attorney Gen.*, 398 Mass. 793, 795-797 (1986) (in determining whether by-laws are "inconsistent with" general laws, Attorney General is guided by same principles as the court). As noted above, the court's approach has been to consider a petition's factual impact.

The language of art. 48 also indicates that the Attorney General should consider a petition's factual impact in determining whether to certify that a petition does not contain excluded subjects. Article 48 provides that the Attorney General is to file received petitions with the Secretary of the Commonwealth if the Attorney General "shall *certify* that . . . [the petition] contains only subjects not excluded from the popular initiative . . ." (emphasis added). Art. 48, The Initiative, II, § 3. As the plaintiffs argue, it is appropriate to construe the language of constitutional amendments in accordance with the language's familiar and plain meaning. See *Buckley* v. *Secretary of the Commonwealth*, 371 Mass. 195, 199 (1976), quoting *Yont* v.

*Secretary of the Commonwealth*, 275 Mass. 365, 366 (1931) (having been approved by the voters, constitutional amendments should be "construed according to the familiar and approved usage of the language"). A standard 1913 dictionary definition of "certify" is as follows: "1. To give certain information of; to make certain, as a fact; to attest authoritatively; to verify. . . . 2. To testify to in writing; to make a declaration concerning, in writing, under hand, or hand and seal. . . . 3. To give certain information to; assure; make certain." Webster's New International Dictionary of the English Language (G. & C. Merriam Co. 1913).[6] This definition is not, of course, controlling. However, it would be inconsistent with even this definition's general sense to conclude that the Attorney General satisfies his duty by confining himself to a facial review of petitions to see if they explicitly involve excluded subjects. Some factual review is necessary before one can in a meaningful way assure, verify, testify to or make certain about a matter.

Review of the debates surrounding art. 48 concerning the Attorney General's role in certifying petitions is somewhat inconclusive. There was extended debate regarding his role in certifying petitions as to proper form. See 2 Debates in the Massachusetts Constitutional Convention 1917-1918, at 723-730 (1918). The court has recently stated that the Attorney General's role in making the proper form certification was intended to be basically one of "avoiding errors of draftsmanship." *Nigro* v. *Attorney Gen.*, *ante* 438, 446 (1988). But see *Paisner*, *supra* at 598 (rejecting narrow construction of Attorney General's role in certifying petitions as to proper form). Unfortunately, there was virtually no debate when, late in its consideration of the initiative and referendum, the convention adopted the requirement that the Attorney General certify that petitions do not contain excluded subjects. 2 Debates, *supra* at 1013. However, on reviewing all of the debate concerning the Attorney General's certification responsibilities, it is fair to say that the convention was relying on that official to ferret out obviously improper initiative petitions. See 2 De-

---

[6] Article 48 was adopted in 1918.

bates, *supra* at 671 (Attorney General should "decide whether a proposed constitutional amendment or a law is the same thing as one that has been submitted within three years" before submission to people rather than Supreme Judicial Court deciding the issue after submission); *id.* at 727-728 (Attorney General is best suited official to make initial determination regarding form of petitions); *id.* at 960 (Attorney General is "obviously" the official to determine if petition contains unrelated items). It would be inconsistent with that role for the Attorney General to limit himself to a strictly facial analysis of proposed petitions, i.e., simply reading petitions to see if they explicitly concern excluded matters. See *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 321-322 (1951) (State officers should not transform safeguards contained in art. 48 into "mere admonitions and recommendations").

Having determined that the Attorney General should consider petitions' factual impact when certifying that they do not contain excluded subjects, the question of the extent of his factual inquiry remains. This is a question of first impression. On review of art. 48's legislative history, we conclude that the Attorney General is not to become involved with holding extensive hearings to determine the full factual impact of a petition. As the Attorney General points out, a requirement that he hold general hearings on submitted petitions was rejected at the 1918 convention and subsequently. See 2 Debates, *supra* at 533; Legislative Research Council, Report Relative to Revising Statewide Initiative and Referendum Provisions of the Massachusetts Constitution, 1975 House Doc. No. 5435, at 103 (concern that hearings by Attorney General would further encumber the initiative process). Rejection of a requirement that the Attorney General hold hearings on submitted petitions is in accord with the view, expressed at the convention, that in performing at least some of his certification responsibilities the Attorney General should not act as a censor of the people's will, 2 Debates, *supra* at 728, and that the people should be allowed to speak freely through the initiative process. *Id.*

Rather than holding extensive hearings on submitted petitions, the Attorney General should approach certification deci-

sions in the same manner that the court approaches review of those decisions. As discussed above, the general approach of the court in cases reviewing Attorney General certification decisions regarding excluded subjects has been to consider the apparent factual impact flowing from a petition's language. It is also appropriate for the Attorney General to consider facts which can be officially noticed. See generally Davis, Official Notice, 62 Harv. L. Rev. 537 (1949).[7] These facts could be quickly determined and the making of such determinations would not involve undue delay which might frustrate the initiative process. In sum, the Attorney General should consider the facts implied by a petition's language and officially noticeable facts when determining whether to certify that a submitted petition contains only subjects not excluded from the initiative petition's operation.

Because it is not clear from the record that the Attorney General considered the facts implicit in the petition's language, and facts susceptible to official notice, this matter is remanded to him to consider such facts and to determine whether certification of the petition was proper.[8] However, the Attorney General should not engage in extended inquiries to determine facts which are not within these categories. The Attorney General, having determined the relevant facts he may consider, is free to affirm his certification of the petition if those facts do not establish the presence of an excluded subject.[9] If it is his deci-

---

[7] Factual matters which are "indisputably true" are subject to judicial notice; these include "[m]atters of common knowledge or observation within the community." *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979). See *Bezio* v. *Patenaude*, 381 Mass. 563, 579 (1980). See also Proposed Mass. R. Evid. 201 (b). Official notice includes matters subject to judicial notice, as well as additional items of which an agency official may take notice due to the agency's established familiarity with and expertise regarding a particular subject area. See Davis, *supra* at 537-538; Gellhorn, Official Notice in Administrative Adjudication, 10 Tex. L. Rev. 131, 136-139 (1941).

[8] The Attorney General states in his brief that in certifying the petition at issue here he considered facts basically of the nature we have determined he should have considered. However, this statement does not overcome his stipulation that he considered no facts regarding the impact of the petition on the utilities' property.

[9] It might be argued that, if a number of facts relevant to the takings analysis are not determinable by the Attorney General, he cannot certify

sion to affirm his certification, the certification shall be considered to be valid ab initio. His decision is, of course, subject to judicial review should the parties seek such review. See, e.g., *Evans* v. *Secretary of the Commonwealth*, 306 Mass. 296, 298 (1940), citing *Horton* v. *Attorney Gen.*, 269 Mass. 503 (1929).

An order shall be entered in the county court directing the Attorney General to reexamine the petition in a manner not inconsistent with this opinion and to determine whether he shall affirm his certification. The county court shall retain jurisdiction of this petition, in order that the single justice in his discretion may enter orders to expedite and otherwise facilitate proceedings. We are confident that all parties are cognizant of the necessity to avoid unnecessary delay in future proceedings.

*So ordered.*

---

the petition because he cannot make certain that it contains no excluded matters. We reject this approach. Resourceful opponents of some initiative petitions could point to factual uncertainties regarding those petitions and the possibility that they may contain excluded matters. To construe art. 48 as requiring the Attorney General not to certify petitions on this speculative basis could effectively limit the initiative petition process. Such a construction will not be adopted. See *Buckley* v. *Secretary of the Commonwealth*, 371 Mass. 195, 198-199, 202-203 (1976). See also 2 Debates, *supra* at 728 (when certifying petitions as to proper form, Attorney General is not to be a censor).