ASSOCIATED INDUSTRIES OF MASSACHUSETTS & others[1] vs. ATTORNEY GENERAL & another.[2]

Suffolk. May 5, 1994. - July 12, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Initiative petition, Freedom of speech and press, Right to assemble. *Initiative. Attorney General. Administrative Law*, Official notice. *Elections*, Ballot. *Corporation*, Political contribution.

Discussion of Federal cases, to which this court might look for guidance, considering a claim that a proposed law regulating corporate political contributions is inconsistent with freedom of the press, freedom of speech and the right of peaceable assembly guaranteed by the First Amendment to the Constitution of the United States. [283-285]

Discussion of the role of the Attorney General in certifying an initiative proposal for submission to the people under art. 48, The Initiative, II, § 3, and the role of this court in reviewing such certification. [285-287]

This court stated that, unless it is reasonably clear that an initiative proposal contains a matter excluded from the initiative process under art. 48, The Initiative, II, § 2, neither the Attorney General, pursuant to his certification powers set forth in art. 48, The Initiative, II, § 3, nor this court, in its de novo review of a challenged certification, should prevent the proposal from appearing on the ballot. [287]

The Attorney General properly certified an initiative petition proposing to restrict the use of corporate funds to support or oppose a ballot question, where it was not reasonably clear on the record presented to the Attorney General that there could not be a compelling State interest in the imposition of a restriction on the use of corporate funds on ballot questions to justify the proposed law's burdening of both corporate ex-

---

[1]Robert H. Arnold, John R. Bertucci, Robert F. Caterino, William S. English, Brian R. Gilmore, William C. Blanker, John J. Gould, Richard B. Hardy, Gail M. Miller, and Robert R. Ruddock. Each individual plaintiff is a registered voter and entitled to challenge the placement of an initiative measure on the ballot. We need not decide, and therefore pass by, the question whether Associated Industries of Massachusetts also may present such a challenge. See *Associated Indus. of Mass.* v. *Secretary of the Commonwealth*, 413 Mass. 1, 5 n.7 (1992).

[2]The Secretary of the Commonwealth.

pressive activity and corporate associational rights protected by arts. 16 and 19, respectively, of the Massachusetts Declaration of Rights. [287-291]

There was no merit to claims by plaintiffs challenging the Attorney General's certification of an initiative petition restricting the use of corporate funds to support or oppose ballot questions that the proposal was not drawn sufficiently narrowly to avoid certain unnecessary restrictions on constitutionally protected freedoms [291-292]; or that voluntary compliance with the proposed law in some way burdened rights guaranteed by the Massachusetts Declaration of Rights [292]; or that a certain disclosure requirement in the proposal burdened associational rights guaranteed by art. 19 of the Declaration of Rights, where the Commonwealth had a compelling State interest to justify requiring such disclosures and where any burden was slight to nonexistent [292-293].

A claim by plaintiffs challenging the Attorney General's certification of a ballot initiative that the Attorney General's summary of the initiative was inaccurate was without merit where the summary properly construed the proposal as it read after the certification of a perfecting amendment pursuant to art. 48, The Initiative, V, § 2, which corrected an apparent typographical error. [293]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 18, 1994.

The case was reported by *Wilkins*, J.

*Gerald J. Caruso* (*Robert P. Rodophele* with him) for the plaintiffs.

*Scott M. Davis*, Assistant Attorney General, for the defendants.

*Charles C. Caldart & David A. Nicholas*, for Margaret A. Middaugh & others, amici curiae, submitted a brief.

WILKINS, J. The plaintiffs challenge the certification by the Attorney General that an initiative petition proposing "An Act for Initiative and Referendum Reform" contains no matter that is excluded from the Commonwealth's initiative process and that the proposal is in proper form for submission to the people. The plaintiffs also challenge the Attorney General's summary of the proposed law and argue that a defect in the proposed law cannot be cured by a perfecting amendment. A single justice of this court reserved decision and re-

ported the case to the full court on the amended complaint, the answer, and a statement of agreed facts. We affirm the Attorney General's certification of the initiative petition.

On August 4, 1993, the initiative petition was filed with the Attorney General. On September 1, 1993, the Attorney General certified that the petition was in proper form for submission to the people and that it contained no subject excluded from the initiative process. Article 48 of the Amendments to the Constitution of the Commonwealth, as amended,[3] provides in The Initiative, II, § 2, that "[n]o proposition inconsistent with any one of the following rights of the individual, as at present declared in the declaration of rights, shall be the subject of an initiative . . . petition: . . . freedom of the press; freedom of speech; . . . and the right of peaceable assembly." Article 48, The Initiative, II, § 3, states in part that, if the Attorney General certifies that the measure is in proper form for submission to the people and that "it contains only subjects not excluded from the popular initiative," the measure may then be filed with the Secretary of the Commonwealth.

The Attorney General prepared a summary of the law, which he submitted to the Secretary of the Commonwealth. As it relates to the major issue before us, the proposed limitation on the use of corporate funds to support or to oppose a ballot question, the summary stated:

> "This proposed law would limit the way in which business and certain nonprofit corporations could contribute to and spend money on campaigns involving an initiative, referendum or other question submitted to the voters at a state or local election. . . .
>
> "Under the proposed law, business and certain nonprofit corporations would be prohibited from making contributions or expenditures to support or oppose a ballot question, but would be permitted to create and

---

[3]When we refer to art. 48, we intend art. 48, as amended by arts. 74, 81, and 108 of the Amendments to the Constitution of the Commonwealth.

solicit contributions to a separate fund to be used to support or oppose a ballot question. A separate fund would be required for each ballot question on which the corporation intended to solicit contributions. . . .

"Contributions to the separate fund could be solicited only from members or stockholders, officers and directors, and employees at a policymaking, managerial or professional level. . . . Nonprofit corporations that are formed for the purpose of promoting political ideas, do not engage in business activities, have no shareholders, and do not have business corporations as members or accept more than one percent of their revenues from such corporations would be exempt from these provisions."[4]

---

[4]Section 3 of the proposed act as submitted to the Attorney General, as it relates to restrictions on the use of corporate funds of a business organization for favoring or opposing a ballot question, reads as follows:

"SECTION 3. Chapter 55 of the General Laws is amended by inserting after section 8 the following section: "Section 8A. (1) For the purposes of this section, 'business organization' means a corporation carrying on the business of a bank, trust, surety, indemnity, safe deposit, insurance, railroad, street railway, telegraph, telephone, gas, electric, light, heat, power, canal, aqueduct, or water company, or trustee or trustees owning or holding a majority of the stock of such a corporation, or business corporation incorporated under the laws of or doing business in the commonwealth.

"(2) Except as provided in this section, no business organization, or officer or agent acting on its behalf, or nonprofit corporation, or officer or agent acting on its behalf, shall directly or indirectly, make or promise to make any contribution or expenditure for the purpose of favoring or opposing the adoption or rejection of any question submitted to the voters.

"(3) A business organization may make expenditures for the establishment and administration of, and the solicitation of contributions to, a separate segregated fund to be used solely for the purpose of favoring or opposing the adoption or rejection of a specific question submitted to the voters.

"A business organization is required to establish a separate segregated fund for each ballot question on which it intends to solicit contributions.

"Contributions to such fund may be solicited only from any of the following persons or their spouses:

Following receipt of the Attorney General's certification and summary, the Secretary of the Commonwealth distributed blank signature forms for circulation by proponents of the initiative. On the first Wednesday in December, 1993, the proponents submitted a sufficient number of signatures to the Secretary of the Commonwealth to require transmission of the initiative petition to the Legislature. Article 48, The Initiative, II, § 4. No legislative action was taken on the initiative petition by the first Wednesday in May. If the necessary further steps are taken pursuant to art. 48, The Initiative, V, § 1, and a court does not direct otherwise, the proposed law will be submitted to the people at the November, 1994, State election.

The major issue in this case is whether the Attorney General erred in certifying that the proposed law was not inconsistent with the protection in the Massachusetts Declaration of Rights of freedom of the press, freedom of speech, and the right of peaceable assembly. Plainly, the proposed law bars the direct use of corporate funds for the purpose of influencing a ballot question. The proposed law, however, allows a corporation to establish and administer a separate fund for such a purpose, to which certain people related to the corporation may be solicited to make contributions. As will be seen, the resolution of this question turns in considerable measure on the nature of the Attorney General's duties in the certification process. But first, we define the dimensions of the issue.

We are presented with no question under the Constitution of the United States. In considering a claim that a proposed law was inconsistent with freedom of the press, freedom of speech, and the right of peaceable assembly, in a circumstance similar to this, this court said in *Bowe* v. *Secretary of*

"(i) stockholders of the business organization;

"(ii) officers and directors or the business organization;

"(iii) employees of the business organization who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities."

*the Commonwealth,* 320 Mass. 230, 249-250 (1946), "what we must decide is not whether the proposed law would abridge these freedoms as they exist under the Federal Constitution, but whether the proposed law would abridge them as they exist under the Massachusetts Declaration of Rights, for, if it would, Amendment 48 excludes the proposed law from the popular initiative. Upon that question of Massachusetts law, Federal decisions are persuasive, but not controlling."

The likely position of the Supreme Court of the United States on the significant constitutional issue before us is not clear. In *First Nat'l Bank* v. *Bellotti,* 435 U.S. 765, 776 (1978), the Court invalidated, as violative of First Amendment free speech rights, a Massachusetts statute that barred the expenditure of corporate funds on any ballot question that did not materially affect the property, business, or assets of the corporation. The plaintiffs rightly rely on that opinion, in which the Court rejected, as not shown by the facts, the argument that the statute was justified because corporations, wealthy and powerful, could undermine the democratic process by drowning out other points of view. *Id.* at 789-790.[5]

The Attorney General looks to more recent opinions of the United States Supreme Court to argue that the Court has departed from the reasoning of its *First Nat'l Bank* opinion. In *Federal Election Comm'n* v. *Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 258-259 (1986), while taking a different view as to a voluntary political association, the Court generally upheld a mandate of a Federal statute that segregated funds be used for contributions to candidates in Federal elections. The Court noted that corporate speech creates a "concern over the corrosive influence of concentrated corporate wealth [that] reflects the conviction that it is important to protect the integrity of the marketplace of political ideas." *Id.* at 257.

---

[5]Only two Justices who participated in the *First Nat'l Bank* case remain on the Court. Justice Stevens, who joined the opinion of the Court, and Chief Justice Rehnquist, who dissented (see *First Nat'l Bank* v. *Bellotti,* 435 U.S. 765, 822 [1978] [Rehnquist, J., dissenting]).

The Attorney General also relies on *Austin* v. *Michigan State Chamber of Commerce*, 494 U.S. 652 (1990), which upheld a State statute that required the use of a separate fund when a corporation wished to expend funds in support of or in opposition to a political candidate. The Court noted that the special advantages that corporations enjoy under the law, including limited liability and perpetual life, grant them an "unfair advantage" in the political arena. *Id.* at 658-659. Both the *Austin* and the *Massachusetts Citizens for Life, Inc.*, cases involved restraints on corporate spending on the election of candidates, not on ballot questions where the risk of, or at least the appearance of, the corrupting influence of corporate contributions, given as quid pro quo to individual candidates, is not as likely to be present. This distinction between candidates and ballot questions was thought to be significant by one Justice who concurred in the Court's opinion in *Austin* v. *Michigan State Chamber of Commerce*. *Id.* at 678 (Stevens, J., concurring) ("there is a vast difference between lobbying and debating public issues on the one hand, and political campaigns for election to public office on the other").[6] See *Citizens Against Rent Control/Coalition for Fair Hous.* v. *Berkeley*, 454 U.S. 290, 299 (1981).

We regard ourselves as fortunate that we need not attempt to resolve the uncertainty of the constitutionality of the proposed law under the First Amendment. Our task is purely a State constitutional one, limited to the special function that this court has in reviewing an Attorney General's certification under art. 48, The Initiative, II, § 3. We turn then to consideration of the role of the Attorney General in certify-

---

[6]The three dissenting Justices in the *Austin* case, all of whom remain on the Court (O'Connor, J., Scalia, J., and Kennedy, J.), strongly opposed the constitutionality of the "censorship" imposed by the statute. *Id.* at 679, 680 (Scalia, J., dissenting). *Id.* at 695, 695-696 (Kennedy, J., dissenting). Of the six Justices who made up the majority in the *Austin* case, only two (Rehnquist, C.J., and Stevens, J.) remain on the Court, and, as noted in the text, one of these regarded the regulation of contributions to candidates as inherently more justifiable than the regulation of contributions designed to influence ballot questions.

ing an initiative proposal for submission to the people and to our role in reviewing that certification.

In the summer of 1988, this court defined certain principles that govern the process by which an Attorney General decides whether to certify that a submitted petition contains only subjects not excluded from the initiative petition process. See *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 402 Mass. 750 (1988) (*Yankee Atomic Elec. Co. I*). The Attorney General should consider not only whether a petition explicitly involves an excluded subject, but also the factual impact of the proposal, if adopted. *Id.* at 756-757. The Attorney General is not required to hold hearings. *Id.* at 758. He may consider facts that can be officially noticed, in addition to facts implied by the proposal itself. *Id.* at 759.

If the Attorney General's certification that the petition does not contain an excluded matter is challenged, the court conducts a de novo review of the Attorney General's decision. *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 207 (1988) (*Yankee Atomic Elec. Co. II*). We consider anew what facts are implicit in the language of the petition or are subject to judicial notice, but we defer to the Attorney General's reasonable determinations concerning facts subject to his official notice. *Id.* at 207-208. We would thus consider facts that are subject to the Attorney General's official notice that the Attorney General unreasonably disregarded. *Id.* at 208.

Our review, just like the Attorney General's, is conducted on a limited record. It is conceivable that facts outside the restricted range of our consideration might demonstrate that a facially valid petition contained an excluded subject. Conversely such facts might show that what appeared on the limited factual record to be at least constitutionally questionable was in fact a permissible subject of a referendum. Where these possibilities exist, our role is not to prevent the people from voting on the proposal. *Yankee Atomic Elec. Co. I, supra* at 760 n.9. Certification should not be denied because of a speculative possibility that some fact or facts may exist, outside the range of the facts that the Attorney General

should consider, that would cause the petition to relate to an excluded matter. *Id.* Challenges on a more substantial factual record may appropriately be advanced when and if the people adopt a proposal. See *Yankee Atomic Elec. Co. II, supra* at 212 n.9. At this stage, however, we follow "the firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws." *Id.* at 211. In other words, unless it is reasonably clear that a proposal contains an excluded matter, neither the Attorney General nor this court on review should prevent the proposal from appearing on the ballot. A challenge to a decision to allow a proposed initiative on the ballot is only the first opportunity to mount constitution-based attacks on the law.

We are now in a position to discuss the question whether the Attorney General was correct in certifying that the initiative proposal did not contain a subject excluded from the popular initiative. In *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230 (1946), this court considered a proposed law that substantially barred a labor union from expending funds to favor or oppose a political candidate or a question submitted to the people. The court held that the proposed law was inconsistent with the rights of freedom of the press (art. 16) and of peaceable assembly (art. 19) expressed in the Declaration of Rights and consequently could not properly be the subject of legislation by the popular initiative. *Id.* at 252.[7] The case before us does not involve an absolute prohibition of speech as in the *Bowe* case, but it does materially restrict the use of corporate funds to support or to oppose a ballot question. That restriction operates at the very

---

[7]The court noted (as was then true) that the Declaration of Rights did not expressly mention a general right of freedom of speech. *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 249 (1946). The court, therefore, did not rely on a violation of freedom of speech in holding that the proposed law was excluded from the initiatives process. *Id.* at 252. In 1948, the people approved an amendment to art. 16 of the Declaration of Rights, stating that "[t]he right of free speech shall not be abridged." Article 48, The Initiative, II, § 2, in part excludes from the initiative process any proposition inconsistent with the freedom of speech "as at present declared in the declaration of rights." The drafters of art. 48 of the Amend-

heart of the right of free speech, limiting the means of communicating ideas on a political question presented to the people for their expression of opinion. Free speech freedoms are founded on the idea that a full airing of views fosters competition in the marketplace of political ideas (see *Abrams* v. *United States*, 250 U.S. 616, 630 [1919] [Holmes, J., joined by Brandeis, J., dissenting]), and permits a more informed choice. When that is done, the people, properly informed, will make the right decision or will have no one to blame but themselves. Any restriction on the dissemination of information on a ballot question suggests that the people cannot be trusted to make the right decision without the restriction in effect.

Article 16 of the Declaration of Rights guarantees corporations the right to speak on ballot questions "in circumstances where they seek to express their views to the public on referenda issues that materially affect them." *First Nat'l Bank* v. *Attorney Gen.*, 362 Mass. 570, 585 (1972) (Tauro, C.J., with whom Reardon, J., joined). See *First Nat'l Bank* v. *Attorney Gen.*, 371 Mass. 773, 792 (1977), rev'd on other grounds, 435 U.S. 765 (1978). We need not now decide whether we would extend art. 16 rights beyond those stated in our *First Nat'l Bank* opinions. It is clear that the proposed law imposes a limitation on the right of a corporation to use its funds to speak out in favor of or in opposition to a ballot question that materially affects it. Although the proposed law in no way regulates the content of speech, it would burden

---

ments apparently assumed that the Declaration of Rights declared a right of freedom of speech, presumably by implication.

Article 16 now reads as follows:

"The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged."

Article 19 provides:

"The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer."

both corporate expressive activity protected by art. 16 and corporate associational rights protected by art. 19 of the Declaration of Rights. Cf. *Austin* v. *Michigan State Chamber of Commerce*, 494 U.S. 652, 658 (1990). The proposed law's burdens on these rights could be justified only by a compelling State interest in the imposition of the restriction. Cf. *id.*; *Citizens Against Rent Control/Coalition for Fair Hous.* v. *Berkeley*, 454 U.S. 290, 299 (1981).[8]

There may be a compelling State interest in a restriction on the use of corporate funds on ballot questions. The Supreme Court recognized the possibility in *First Nat'l Bank* v. *Bellotti*, 435 U.S. 765 (1978). The argument in support of restricting corporate participation in a ballot question campaign depended "upon the assumption that such participation would exert an undue influence on the outcome of a referendum vote, and — in the end — destroy the confidence of the people in the democratic process and the integrity of government." *Id.* at 789. The Court rejected the argument that "corporations are wealthy and powerful and their views may drown out other points of view" (*id.*), not because the argument was irrelevant, but because there were no supporting

---

[8]We have never discussed the compelling State interest requirement specifically in relation to restrictions on rights guaranteed by art. 16 and art. 19, but the applicability of that standard is implicit in our cases. See, e.g., *Bachrach* v. *Secretary of the Commonwealth*, 382 Mass. 268, 273, 275-276 (1981) (prohibiting candidate from being designated on ballot as "Independent" was substantial restriction of political expression and association protected by arts. 1 and 16, unjustified by any legitimate State interest); *Commonwealth* v. *Dennis*, 368 Mass. 92, 99 (1975) (in context of undifferentiated First Amendment and art. 16 challenges to law prohibiting the writing and dissemination of anonymous political leaflets and posters, court stated, "In order to justify a restraint on protected expression, . . . the State must demonstrate that there is a compelling State interest in such a restraint"); *Opinion of the Justices*, 363 Mass. 909, 912, 916-918 (1973) (same constitutional issues concerning freedom of press are posed under First Amendment and art. 16; law mandating newspapers to publish responsive political advertisements was not justified by any State interest).

The identity of the standard does not, however, mean that this court's conclusions on applying the compelling State interest standard will invariably be the same as those of the Supreme Court of the United States.

"record or legislative findings that corporate advocacy threatened imminently to undermine democratic processes, thereby denigrating rather than serving First Amendment interests." *Id.* If there had been such showing, the Court said, "these arguments would merit our consideration." *Id.*

In *Austin* v. *Michigan State Chamber of Commerce,* 494 U.S. 652, 658-660 (1990), the Court, citing earlier opinions concerning the use of corporate power in the political marketplace, found that a compelling State interest justified the requirement of the use of a separate corporate fund. "[T]he unique state-conferred corporate structure that facilitates the amassing of large treasuries warrants the limit on independent expenditures." *Id.* at 660. That reasoning, which the *Austin* opinion viewed as applicable to corporate financial activity concerning a political candidate, may provide a compelling interest in regulating similar activities concerning a ballot question.

On the limited record that the Attorney General is entitled to consider in certifying an initiative petition under art. 48, there is no showing here that the relative voice of corporations has been overwhelming or even significant on Massachusetts ballot questions or that there has been any threat to the confidence of the citizenry in government. Nor is there any way on this record to assess the extent of the burden of the requirement that a corporation express its views on a ballot question through the medium of a separate fund for which solicitations may be sought only from a limited class of people related to the corporation and toward which no corporate assets may be contributed. These record "deficiencies" are the fault of no one. They are inherent in the certification process. Just because the Attorney General is unable, on the record, to demonstrate a compelling State interest in requiring a corporation to use a separate fund to finance the expression of its views on a ballot question, it does not mean that such an interest does not exist or could not be shown on a full record.

The question comes down to a determination whether the people should be denied the right to vote on an initiative pro-

posal where it is impossible to rule whether, if adopted, the proposal would deny rights protected by the Declaration of Rights. We have expressed earlier in this opinion our view that, where it is not reasonably clear that a proposal contains an excluded matter, the proposal should appear on the ballot. The initiative and referendum provisions of the Constitution of the Commonwealth were adopted to permit the people to participate directly in the legislative process. An expanded view of the Attorney General's authority to bar ballot access is not warranted. "[O]n reviewing all of the debate concerning the Attorney General's certification responsibilities, it is fair to say that the [Massachusetts Constitutional Convention of 1917-1918] was relying on that official to ferret out obviously improper initiative petitions." *Yankee Atomic Elec. Co. I, supra* at 757-758. The initiative proposal is not "obviously improper" simply because it would place some restrictions on free speech, free press, or the right of peaceable assembly.

The plaintiffs next argue that, even if there were a compelling State interest that justifies the separate fund mandate, the law is not drawn narrowly enough to avoid certain unnecessary restrictions on constitutionally protected freedoms. See *Opinion of the Justices*, 396 Mass. 1211, 1214 (1985). We address their objections briefly. (1) On the limited record, the inclusion of a trustee holding a majority of the stock of a corporation within the definition of "business organization" (see § 8A [1], note 4 above) is not shown to be an improper burden on protected rights. We read the restriction to apply to the use of trust assets, not to a trustee's use of personal funds. (2) The exemption of certain nonprofit corporations is justified and perhaps is even compelled by the Supreme Court's holding in *Federal Election Comm'n* v. *Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986). That such an entity is exempt even if it receives up to one percent of its revenue from business corporations seems de minimis and, in any event, is not shown to represent an inappropriate underinclusiveness in the proposed act. (3) The fact that the proposed act reaches all business corporations, large and

small, public and private, affluent and poor, is not a valid
ground of objection. The potential for distorting the political
process is present in all cases. See *Austin* v. *Michigan State
Chamber of Commerce, supra* at 661. (4) The exclusion of
partnerships is warranted because there is no suggestion that
they have had an adverse effect in the marketplace of politi-
cal ideas. Unincorporated labor unions are subject to differ-
ent restrictions on the use of their funds. See *Austin* v. *Mich-
igan State Chamber of Commerce, supra* at 665; *Abood* v.
*Detroit Bd. of Educ.*, 431 U.S. 209 (1977). (5) Media corpo-
rations are not expressly excluded from the operation of the
law, as they were from the separate fund law considered in
the *Austin* case. The prohibition of § 8A (2) (see note 4
above) does not appear to relate to a media corporation using
its own communication devices, and the notion that such a
corporation must establish a separate fund to finance its own
expression of editorial opinion on a ballot question is not
logical.

The plaintiffs make an independent attack on the provision
in the proposed act which would permit a corporation's ballot
committee to state in its printed matter and broadcast adver-
tisements (and in the State secretary's official publication of
arguments for and against a measure) that it "is in compli-
ance with the voluntary expenditure limits established under
the Act for Initiative and Referendum Reform." The expen-
diture limits are $1,000,000 in the calendar year of the elec-
tion and $250,000 in the years prior to or following the elec-
tion. This entirely voluntary arrangement does not burden
those freedoms described in the Declaration of Rights which
are excluded from the initiative process.

The plaintiffs next challenge an aspect of the provision in
the proposed law that would require a corporation's ballot
committee to report any "late contribution" within one busi-
ness day of receipt to the office of campaign and political
finance along with the amount of the contribution and such
information as the occupation, name, and address of the con-
tributor, and the name and address of any employer of the
contributor. A late contribution is defined as any contribu-

tion from a single contributor of $1,000 or more made "before the date of the election but after the closing date of the last campaign statement required to be filed prior to the election by a committee participating in the election."

The plaintiffs' sole objection is that the requirement that such contributors reveal the names of their employers will inhibit some from joining in support of a ballot committee's efforts, thus burdening art. 19 associational rights. This requirement of disclosure of one's employer may be avoided simply by making a contribution not subject to the late contribution provision. The burden of the disclosure requirement seems slight to nonexistent. In any event, the Commonwealth has a compelling interest in making public the fact of last-minute contributions from particular sources or interests intended to influence a ballot question. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 253 (1946). The availability of a process by which the people may come to know of these facts before they vote involves a slight burden, if any, and fulfils a valid governmental goal.

Finally, we consider the argument that the Attorney General's summary is inaccurate and that a defect in the proposed law cannot be cured through a perfecting amendment. This entire argument is derived from a small error, perhaps a typographical one, in the language of proposed G. L. c. 55, § 8A (3). That section, quoted in note 4 above, states that among the group from whom funds may be solicited are certain persons or their spouses, including "(ii) officers and directors *or* the business organizations" (emphasis supplied). In context and in view of the obvious purpose of the proposed law, the word "or" should be "of." We have been advised that, since oral argument, the Attorney General has certified a perfecting amendment pursuant to art. 48, The Initiative, V, § 2, changing the word "or" to "of." The Attorney General's summary properly construed the proposal as it reads after the perfecting amendment. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 237-238 (1981).

We remand the case to the county court for entry of a judgment affirming the Attorney General's certification of the initiative petition.

*So ordered.*